IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

TAMMY FRANKS                           *

        Plaintiff,              *

vs.                                    *
                                CASE NO. 3:06-CV-68(CDL)
                                     *
CENTRAL GARDEN & PET COMPANY;
PENNINGTON SEED, INC.; and             *
GRO TEC, INC.
                                     *
        Defendants.
                                     *

## O R D E R

This lawsuit arises from the Defendants' termination of the employment of Plaintiff Tammy Franks ("Franks"). Franks alleges that she was subjected to gender and disability discrimination and was not properly informed of her right to continue her health insurance coverage upon the termination of her employment. She asserts federal claims under Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000e, *et seq.* and 42 U.S.C. § 1981a ("Title VII"), the Americans With Disabilities Act of 1990, as amended, including the Civil Rights Act of 1991, 42 U.S.C. § 12101, *et seq.* and 42 U.S.C. § 1981a ("ADA"), and the Consolidated Omnibus Budget and Reconciliation Act of 1985, 29 U.S.C. § 1161-1168 ("COBRA"). She also alleges state law claims based upon O.C.G.A. § 34-5-3, negligent supervision and retention of employees, and intentional infliction of emotional distress. Defendants have moved for summary judgment (Doc. 42) on all of Plaintiff's claims, and Plaintiff has moved for partial

summary judgment (Doc. 46) on her COBRA claim. For the following reasons, the Court grants Defendants' motion and denies Plaintiff's motion.

## FACTUAL BACKGROUND

Franks worked for Defendant Gro Tec, Inc. ("Gro Tec") from 1994 until February 2005. Gro Tec manufactures lawn and garden products.[1] Franks started working for Gro Tec as a "coordinator for fertilizer traffic" earning $6.00 per hour, and she worked her way up to the position of office manager. (Owens Decl. ¶ 19, Jan. 8, 2007.) In December 2004, Franks also assumed the title and duties associated with the "Wal-Mart traffic coordinator" position. (*Id.* at ¶ 27.) At the time her employment with Gro Tec ended, Franks was earning $13.50 per hour and was "the highest hourly paid manager or supervisor working at Gro Tec." (*Id.* at ¶ 14.)

Shortly after Franks assumed the position of Wal-Mart traffic coordinator, she began to complain to the plant manager about a "fragrance intolerance." Although Franks had been able to manage her condition prior to 2005, the new position required Franks to supervise two new employees, each of whom wore perfume that bothered Franks. In late January 2005, Franks informed the two employees of her "fragrance intolerance" and asked them to accommodate her

---

[1] Gro Tec is a wholly owned subsidiary of Defendant Pennington Seed, Inc. ("PSI"). In 1998, approximately four years after Franks began working for Gro Tec, PSI merged with Defendant Central Garden & Pet Co. ("Central") and became one of Central's subsidiaries.

2

sensitivity by refraining from wearing perfume to work while Franks was present. She also mentioned to the assistant plant manager that "it was hard . . . to work . . . with the cologne." (Pl.'s Dep. 108:4-5, Sept. 25, 2006.) According to Franks, at least one of the employees increased the amount of her perfume and Franks requested that upper management address the situation. By February 1, 2005, Franks believed that her requests for accommodation were not being taken seriously, and she emailed the plant manager and the assistant plant manager to inform them that she was going to start leaving work fifteen minutes early to avoid meeting the perfumed employees at the time clock. She called in sick to work on February 2, 3, and 4, and left early on February 7. When the plant manager went to look for Franks on the afternoon of February 7, he "noticed that she had cleaned out all of her things." (Owens Decl. ¶ 36.) Franks never returned to work for Gro Tec after February 7, 2005, although she participated in an exit interview on February 15, 2005. At the end of this interview, Franks received a copy of all of her separation paperwork, including information about continuing her health insurance coverage.

On February 3, 2006, Franks filed the present action. She asserts claims under Title VII and O.C.G.A. § 34-5-3, alleging that at the time of her employment with Gro Tec, she was paid less than similarly situated male managers who were compensated on a salaried basis as opposed to an hourly wage. She also claims that Defendants

violated the ADA by failing to accommodate her "fragrance intolerance" disability, harassing her about this disability, and constructively terminating her employment when she asked for an accommodation. Additionally, Franks contends that at the time of her termination, Defendants failed to adequately inform her of her right to continue her group health insurance coverage, and that this failure to provide adequate notice violated COBRA. Finally, Franks asserts state law causes of action for negligent supervision and retention of employees and intentional infliction of emotional distress.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This may be accomplished by showing that the nonmoving party will be unable to "establish the existence of an element essential to [the nonmoving] party's case, and on which [the nonmoving] party will bear the burden of proof at trial." *Id.* at 322.

Once the moving party has met its burden, the burden shifts to the nonmoving party to "designate specific facts showing that there

4

is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). There is a genuine issue if the combined body of evidence, viewed in the light most favorable to the nonmoving party, would allow a reasonable jury to find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, the relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

## DISCUSSION

### I. Title VII Claim

Franks asserts a Title VII claim for gender-based wage discrimination, claiming that "she was paid on an hourly basis and thus effectively paid less than men who held similar positions and yet were paid on a salary basis." (Pl.'s Am. Mem. of Law in Opp. to Defs.' Mot. for Summ. J. 16 [hereinafter Pl.'s Am. Mem.].) Under Title VII, it is Franks's burden to show by a preponderance of the evidence that Defendants intentionally engaged in unlawful discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). Since she relies on circumstantial evidence to show that Defendants engaged in unlawful wage discrimination, Franks must first establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). In order to establish a prima facie case of wage discrimination based on gender,

Franks must establish (1) that she belongs to a protected class, (2) that she received low wages, (3) that similarly situated comparators outside the protected class received higher compensation, and (4) that she was qualified to receive the higher compensation. *See Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1528-29 (11th Cir. 1992). As a female, Franks clearly belongs to a protected class. Additionally, construing the present record in Franks's favor, as is required at this stage of the proceedings, the Court finds that Franks received lower wages than her alleged comparators.[2] Thus, the preliminary issue to be decided is whether Franks's alleged comparators are, in fact, valid comparators. The Court finds that they are not.

In order for an employee to be a valid comparator to the plaintiff, the employee must be "similarly situated in all relevant respects." *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003)(quoting *Holifield v. Reno*,115 F.3d 1555, 1562 (11th Cir.1997)). In other words, the employee must have "very

---

[2] In 2005, at the time of her termination, Franks worked for Gro Tec as the office manager and Wal-Mart traffic coordinator. She earned an hourly wage of $13.50 per hour, which she alleges amounted to approximately $27,000 per year. According to Franks, Defendants paid a salary greater than $27,000 to three male employees who were similarly situated to Franks: (1) her replacement as traffic coordinator, Jeramie Franks ("J.F."), earned "a salary of [at least] $42,000"; (2) an employee "in Purchasing," Mark Neugebauer ("M.N."), earned a $46,800 salary in 2004-2005; and (3) Henry Bauer ("H.B."), who "performed similar duties to Franks," earned $36,000 when he "went on salary in or about October 27, 2003." (Pl.'s Am. Resp. to Defs.' Statement of the Material Facts as to Which There is No Genuine Issue to be Tried ¶¶ 170, 163, 171, 165, 166 [hereinafter Pl.'s Am. Resp. to Facts].)

6

similar job-related characteristics" and be "in a similar situation" to Franks. *MacPherson v. University of Montevallo*, 922 F.2d 766, 774 (11th Cir. 1991). On a defendant's motion for summary judgment, it is the plaintiff's burden to point to evidence supporting the claim that an employee is similarly situated to the plaintiff. Here, Franks has failed to meet that burden. Although there is evidence to support the contention that three of her fellow "senior staff" members, each of whom is male, received salaries that were higher than Franks's hourly wage compensation, she has failed to point to evidence from which a reasonable jury could determine that any of the alleged comparators had "very similar job-related characteristics" to Franks. *See MacPherson*, 922 F.2d at 774.

Defendants have produced uncontroverted evidence that the alleged comparators were production managers or warehouse managers, positions Franks never held. Quite simply, the alleged comparators performed duties that Franks never performed.[3]

---

[3] For example, during the brief period in which J.F. assumed Franks's duties as traffic coordinator, he was also acting as "warehouse manager" and was "responsible for (1) managing [] all shipping and receiving; (2) managing, Jerome Pennamon, the 'warehouse supervisor'; (3) and managing returned merchandise, including actual receipt of goods, documentation of the receipts, and communication and coordination with clerical credit individuals." (Defs.' Br. in Supp. of Mot. for Summ. J. 5.) Furthermore, "[w]hen [H.B.] was the traffic coordinator . . . , he was paid an hourly wage just like [Franks,]" and that when he began to earn a salaried wage, he "was also responsible for production, staffing (up to 25 employees per shift), scheduling (up to three shifts per day), fertilizer quality control and safety." (*Id.*) Franks does not dispute that she "was never responsible for" any of these duties (*see id.*).

7

Although Franks claims that she was "similarly situated in all relevant respects" to M.N., J.F., and H.B., *see Knight*, 330 F.3d at 1316, she presents no evidence to contradict Defendants' evidence that she was not so similarly situated. Franks relies upon vague allegations that do not address directly the nature of the alleged comparators respective job duties. For example, with respect to M.N., the only evidence Franks puts forth to establish that he is a similarly situated comparator is the fact that M.N. appears "at the same level" as Franks on an "undated organizational chart." With respect to J.F., Franks simply contends that J.F. (1) "had more help than she had" in the position of "traffic coordinator," (2) had "less tenure at Gro Tec than Franks[,]" and (3) had "less work experience than Franks." (Pl.'s Am. Resp. to Facts ¶¶ 204, 168-69.) Finally, with respect to H.B., Franks contends that she "performed more duties than [H.B.] did" and that H.B. "had [only] one employee reporting to him." (*Id.* at ¶¶ 164-65.) Franks cannot simply claim that her employment duties were "very similar" to those of her alleged comparators and then proceed to highlight the differences in her employment that she believes entitled her to additional compensation. Given the uncontroverted evidence that these alleged comparators performed materially different job duties, Franks's failure to present evidence that she received lower wages than any "similarly situated" male comparator is fatal to her gender discrimination claim. Franks has not established a prima facie case of wage

discrimination, and Defendants are therefore entitled to summary judgment on this claim.

## II. ADA Claims

Franks also asserts claims for discrimination, harassment and retaliation on the basis of a disability, all of which are prohibited by the ADA. 42 U.S.C. § 12112(a). In order to avoid summary judgment on an ADA claim, the plaintiff must first establish a prima facie case. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Wascura v. City of South Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001); *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1998). With respect to each of Plaintiff's claims—discrimination, harassment, and retaliation—the initial inquiry is whether Franks's "fragrance intolerance" constitutes a disability under the ADA. *See Standard*, 161 F.3d at 1327-28. As it is defined in the Act, the term "disability" includes: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A)-(C). An individual who satisfies any one of these three definitions is considered disabled. *Gordon v. E. L. Hamm & Assocs.*, 100 F.3d 907, 910-11 (11th Cir. 1996). Here, Franks claims that she has a physical impairment that has substantially limited a major life activity and that Defendants regarded her as having such an impairment. 42 U.S.C. § 12102(A), (C).

9

A.   Substantial Physical Impairment

Franks contends that her "fragrance intolerance" constitutes a physical impairment that substantially limits the major life activity of breathing. For purposes of the ADA, Franks's "fragrance intolerance" constitutes a physical impairment and breathing constitutes a major life activity.[4] In order to establish that her "fragrance intolerance" constitutes a disability under the ADA, however, Franks must present evidence that the impairment "substantially limits" her ability to breathe. Since the Court finds that no reasonable jury could conclude from the evidence in the present record that Franks's "fragrance intolerance" substantially limits her ability to breathe, Franks is not disabled and cannot maintain her ADA claims on this basis.

An impairment is considered to "substantially limit" a major life activity when the impaired individual is "unable to perform" the activity or is "significantly restricted as to the condition, manner or duration" in which he or she performs the activity. 29 C.F.R. § 1630.2(j)(1)(i)-(ii); *see also Toyota Motor Mfg. Ky., Inc. v. Williams*, 534 U.S. 184, 196, 122 S. Ct. 681, 691 (2002) ("[S]ubstantially" in the phrase "substantially limits" suggests

---

[4]Although the ADA does not define "major life activities," the Eleventh Circuit and Supreme Court have frequently looked to the EEOC regulations when construing the ADA. *Rossbach*, 371 F.3d 1357 n.4. These regulations provide that "major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I).

"considerable" or "to a large degree.") (alteration in original). Whether the ability to perform a major life activity is "substantially limited" is to be determined by examining three factors: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact, or expected impact, of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2). Applying these factors to the present case, the Court concludes that Franks has failed to demonstrate that her "fragrance intolerance" substantially limits her ability to breathe. First, although Franks claims that her "fragrance intolerance" substantially limits her ability to breathe, the majority of the symptoms of which she complains are wholly unrelated to her breathing.[5] Second, despite evidence that strong odors affect Franks's breathing, her reactions to the perfume were never severe and she admits that she managed the problem herself for years. Additionally, even if Franks's "intolerance" is a permanent condition, she admits that it only limits her ability to breathe when she is confronted with a strong odor and that she can avoid the problems with breathing if she limits her exposure to such odors. Thus, unless she fails to remove herself from the offensive odor, the impact to Franks resulting from her "fragrance intolerance"

---

[5] Franks lists her symptoms as headaches, sinus trouble, watery eyes, shortness of breath, tightening of the chest, and nausea. Franks claims that she has "not actually vomited because of [her condition], because normally, before [she] would vomit [she] would try to remove herself." (Pl.'s Dep. 77:23-25.)

11

is neither permanent nor long term. Finally, Franks clearly declares that her "fragrance intolerance" does not "impair[] [] the major life activity of work." (*See* Pl.'s Am. Resp. to Facts ¶ 1.) It is difficult to understand how an individual with a *substantially* limited breathing ability could still perform her job unencumbered. The Court finds that Franks does not have an impairment which substantially limits her breathing, and thus she is not disabled based upon the theory of actual physical impairment.

B. Regarded as Having an Impairment

Franks also argues that Defendants regarded her as having a disability. She relies on the definition provided by the EEOC regulations, which states that an individual is "regarded as having [] an impairment" when the individual "[h]as a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation[.]" 29 C.F.R. § 1630.2(l)(1). Under this definition, "[a]s with actual disabilities, a perceived impairment must be *believed* to substantially limit a major life activity of the individual." *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1230 (11th Cir. 1999) (emphasis added). According to Franks, Defendants regarded her as disabled because "they provided her with accommodation in the form of an adjusted cleaning schedule, and [] they contemplated other accommodations[,]" and because Owens (1) "was present for discussions about Franks's breathing condition,"

12

(2) "heard [Franks] state that certain smells took her breath," (3) "was aware [that] people in the front office avoided wearing perfume," and (4) "wrote a memo that Franks 'is affected by fragrances and others have been affected by her sensitivity.'" (Pl.'s Am. Mem. 9-10.) Giving Franks the benefit of all doubt, however, this evidence does not establish that Defendants regarded her as disabled. At most, this evidence demonstrates that Defendants recognized Franks's odor sensitivity as something she claimed to affect her breathing. There is no evidence that Defendants "believed [Franks's fragrance intolerance] to substantially limit [her] major life activity of [breathing]." *See Hilburn*, 181 F.3d at 1230. Since Franks has failed to point to evidence supporting her allegations that she was actually disabled or that Defendants regarded her as such, she has failed to establish a prima facie case of discrimination, harassment or retaliation under the ADA and Defendants are entitled to summary judgment.[6]

---

[6]Since Franks is not disabled, she cannot establish that Defendants either discriminated against or harassed her because of her disability. Furthermore, Franks bases her retaliation claim on the allegation that she was fired for requesting an accommodation for her "fragrance intolerance." The Eleventh Circuit has held that in order for an accommodation request to constitute a "protected activity" for purposes of a retaliation claim, the requesting employee must have "a good faith, objectively reasonable belief that his activity is protected by the statute." *Standard*, 161 F.3d at 1328. As the court noted in *Standard*, it is not objectively reasonable for an employee to believe that he or she is entitled to an accommodation unless "the impairment [] substantially limit[s] a major life activity." *Id.* Since Franks failed to present evidence that her impairment substantially limits her ability to breathe, it was not objectively reasonable for Franks to believe that she was entitled to an accommodation under the ADA.

## III. COBRA Claim

Franks's final federal claim is that PSI "failed to comply with the requirements for effective notice of the availability of continuation [health insurance] coverage under COBRA."[7] (Compl. ¶ 50.) This claim is presently before the Court on the parties' cross-motions for summary judgment. Franks asserts that she is entitled to summary judgment because no reasonable jury could conclude from the evidence (1) that PSI complied with the COBRA notice requirements or (2) that PSI should not be penalized for its noncompliance. PSI contends that there is at least a jury question as to whether the notice provided to Franks complies with COBRA. PSI also contends that even if the Court finds that it failed to provide proper notice, it should not be required to pay a penalty because there is no evidence of prejudice to Franks or bad faith on the part of PSI.

Under COBRA, an employer who provides group health insurance coverage is required to provide notice to "any qualified beneficiary" of his or her right to continue health insurance coverage for up to eighteen months after a "qualifying event" that would otherwise terminate such coverage. *See* 29 U.S.C. § 1166(a)(4) (outlining statutory notice requirements); 29 U.S.C. § 1162 (defining the term

---

[7]Although Franks initially asserted this claim against all Defendants, she admits that PSI is the "plan administrator" and has now "agree[d] to assert her COBRA claim only against PSI." (Pl.'s Reply Br. in Further Supp. of her Mot. for Partial Summ. J. 1 n.2.)

14

"continuation coverage"). Termination of a covered employee constitutes a "qualifying event" that triggers an employer's COBRA obligations. 29 U.S.C. § 1163(2). Although the statute itself does not prescribe the contents of the required notice, "[t]he notice must be sufficient to permit the discharged employee to make an informed decision whether to elect [continuation] coverage." *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1230 (11th Cir. 2002) (*citing Meadows v. Cagle's, Inc.*, 954 F.2d 686, 692 (11th Cir. 1992)). Additionally, in November 2004, the U.S. Department of Labor promulgated regulations requiring plan administrators to include specific items of information in the COBRA notices sent to qualified health plan beneficiaries. *See* 29 C.F.R. § 2590.606-4.

It is undisputed that PSI provided notice to Franks of her COBRA rights, and the parties do not dispute the contents of the notice. Thus, since the parties agree on the relevant facts, Franks's COBRA claim is appropriate for summary judgment. Franks contends that PSI failed to comply with the COBRA notice requirements because the notice she received was not "sufficient to permit [her] to make an informed decision whether to elect [continuation] coverage." *See Scott*, 295 F.3d at 1230. Specifically, Franks contends that the notice PSI provided lacked certain information required by the 2004 federal regulations.[8] The Court finds that the only information not

---

[8] Specifically, Franks argues that PSI failed to: (1) "specify the last date of Franks's health insurance coverage;" (2) "specify the date by which she had to exercise her election of COBRA benefits;" (3) "address

15

provided as required by the regulations were "the date on which coverage under the plan will terminate" and "the date by which the election must be made[.]" 29 C.F.R. § 2590.606-4(b)(4)(iii), (v). It is clear, however, that these technical deficiencies in the notice did not prevent Franks from making a meaningful choice to continue her coverage, since she did in fact continue her insurance coverage. Accordingly, the Court grants Defendants' motion for summary judgment on the COBRA notice claim and denies Plaintiff's motion.[9]

## CONCLUSION

For the reasons stated herein, the Court grants Defendants' Motion for Summary Judgment (Doc. 42) with respect to Plaintiff's Title VII, ADA and COBRA claims. The Court denies Plaintiff's Motion for Partial Summary Judgment (Doc. 46) on the COBRA claim. Since the Court's rulings in this Order dispose of all of Plaintiff's federal

---

the notice to the other beneficiaries;" (4) "explain the consequences of waiving continuation coverage;" and (5) "identify the continuation coverage that would be made available." (Compl. ¶ 28.)

[9]Even if the technical deficiencies in the notice constituted a violation of COBRA, the Court would decline to impose any penalties upon Defendants. It is clear from the record that Franks received two copies of her COBRA notification, one during her February 15, 2005 exit interview and the other by certified mail on March 2, 2005. (*See* Pl.'s Dep. 151:19-152:22.) It is also clear that, subsequent to receiving this information, Franks signed up for COBRA benefits and received medical coverage for the statutory eighteen-month period. (*See id.* at 152:2-13.) Thus, although PSI provided Franks with notice that was technically deficient, it was still "sufficient to permit [her] to make an informed decision whether to elect [continuation] coverage." *See Scott*, 295 F.3d at 1230. Accordingly, pursuant to the discretion conferred under 29 U.S.C. § 1132, the Court declines to impose penalties for PSI's omission of certain information from Franks's COBRA notification.

16

law claims and federal question jurisdiction is the only alleged basis for jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, which are hereby dismissed without prejudice.

IT IS SO ORDERED, this 10th day of August, 2007.

S/Clay D. Land<br>
CLAY D. LAND<br>
UNITED STATES DISTRICT JUDGE